# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| WILLIAM WALKER, Individually and For Others Similarly Situated<br><br>v.<br><br>AUDUBON COMPANIES, LLC, AUDUBON FIELD SOLUTIONS, LLC, and AUDUBON ENGINEERING COMPANY, L.P. | **Case No.** _____<br><br>Jury Trial Demanded<br><br>Rule 23 Class Action<br>FLSA Collective Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     William Walker (Walker) brings this class and collective action lawsuit to recover unpaid wages and other damages from Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. (collectively, Audubon).

2.     Audubon employed Walker as one of its Day Rate Workers (defined below), including in Washington County, Pennsylvania.

3.     Audubon pays Walker and its other Day Rate Workers by the day.

4.     Walker and the other Day Rate Workers regularly work more than 40 hours a week.

5.     But Audubon does not pay Walker and its other Day Rate Workers overtime at time and a half their regular rate of pay.

6.     Instead, Audubon pays Walker and its other Day Rate Workers a flat sum each day worked, ostensibly covering the first 10 hours worked in a day, and an amount equal to their day rate divided by 10 hours for each hour worked in excess of 10 in a day (Audubon's "day rate pay scheme").

7.     Audubon does not pay the Day Rate Workers a premium or increased rate for hours worked in excess of 40 in a week.

1

8.      Audubon pays Walker and its other Day Rate Workers under its day rate pay scheme regardless of any allegedly individualized factors.

9.      Audubon's day rate pay scheme violates the Fair Labor Standards Act (FLSA) and the Pennsylvania Minimum Wage Act (PMWA) by depriving Walker and the other Day Rate Workers of premium overtime wages for all hours worked in excess of 40 in a workweek.

10.     Likewise, Audubon's day rate pay scheme violates the Pennsylvania Wage Payment and Collection Law (WPCL) by depriving Walker and the other Day Rate Workers of earned overtime wages on their regular paydays and/or following the termination of their employment.

11.     In 2025, Audubon reclassified workers subject to the same pay practice as Walker to non-exempt under the FLSA.

## JURISDICTION & VENUE

12.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

13.     This Court has supplemental jurisdiction of the state-law subclass claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

14.     This Court has general personal jurisdiction over each Audubon entity because each is registered to do business in the Commonwealth. *See Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122, 134 (2023); *see also* 42 PA. CONS. STAT. § 5301.

15.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

16.     Specifically, Walker and other Day Rate Workers worked for Audubon in and around Washington County, Pennsylvania, which is in this District and Division.

**PARTIES**

17.     Audubon employed Walker as an environmental inspector and assistant chief inspector from approximately January 2021 until February 2025 in Pennsylvania and Ohio.

18.     Throughout his employment, Audubon paid Walker according to its day rate pay scheme.

19.     Walker's written consent is attached as **Exhibit 1**.

20.     Walker brings this class and collective action on behalf of himself and all other similarly situated employees who Audubon paid under its day rate pay scheme.

21.     The FLSA Collective of similarly situated employees is defined as:

> **All Audubon employees who were paid under its day rate pay scheme at any time during the past 3 years[1] through final resolution of this matter (the "FLSA Collective Members").**

22.     Walker also seeks to represent a class under the PMWA and WPCL pursuant to FED. R. CIV. P. 23.

23.     The Pennsylvania Class of similarly situated employees is defined as:

> **All Audubon employees who worked in, or based out of Pennsylvania[2], who were paid under its day rate pay scheme at any time during the past 3 years through final resolution of this matter (the "Pennsylvania Class Members").**

---

[1] All claims released through settlement of *Walker v. Marathon Petroleum Corporation, et al.*, No. 2:22-cv-01273-NR (W.D. Pa.) up to and including October 26, 2023 are excluded from this class definition.

[2] The PMWA and WPCL apply to Pennsylvania workers, regardless of the state in which the work is performed. *Truman v. DeWolff, Boberg & Assocs., Inc.*, No. 07-01702, 2009 WL 2015126, at *2 (W.D. Pa. July 7, 2009) ("In light of the FLSA's explicit recognition that states may offer greater protections to its employees than the FLSA, we are reluctant to find an unstated foreign-work exemption in the PMWA based solely on the fact that the FLSA contains such an exemption."). Courts apply a five-factor test for purposes of the PMWA and WPCL to determine whether workers are based in Pennsylvania, which include (1) employer's headquarters; (2) employee's physical presence working in Pennsylvania; (3) extent of employee's contact with Pennsylvania Employer, i.e., reporting, direction, supervision, hiring, assignment, and termination; (4) employee's residence; and (5) employee's ability to bring her claim in another forum. *See Matthews v. BioTelemetry, Inc.*, No. 18-561, 2018 WL 3648228, at *3 (E.D. Pa. July 31, 2018).

24.    The FLSA Collective Members and the Pennsylvania Class Members are collectively referred to as the "Day Rate Workers."

25.    Audubon Companies, LLC is a Texas limited liability company headquartered in Metaire, Louisiana.

26.    Audubon Companies, LLC can be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

27.    Audubon Field Solutions, LLC is a Louisiana limited liability company headquartered in Metaire, Louisiana.

28.    Audubon Field Solutions, LLC can be served with process by serving its officers, directors, managing agents, or general agents at its registered office**: 1515 Market St. Ste. 1210, Philadelphia, Pennsylvania 19102.**

29.    Audubon Engineering Company, L.P. is a Texas limited partnership headquartered in Metaire, Louisiana.

30.    Audubon Engineering Company, L.P. can be served through its registered agent: **CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, Pennsylvania 17101**.

31.     Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. function as a single enterprise for purposes of the FLSA and Pennsylvania wage law.

32.    Each Audubon entity shares the same offices as its principal place of business.

33.    Indeed, when Audubon switched the inspectors pay structure from the day rate pay scheme to an hourly plus time and a half overtime structure, Audubon also switched them to a "different part of the company," that is, from Audubon Field Solutions, LLC to Audubon Engineering Company, L.P., without altering their job duties, supervision, or reporting structure. **Exhibit 5,** Chief Inspector Thomas Culver Deposition, p. 49:11-24.

4

34. All Audubon employees, regardless of which "part of the company" they work for have "@auduboncompanies" email addresses.

35. And these Audubon entities utilize the same centralized, payroll, human resources, and legal departments, which they refer to as "Shared Services." **Exhibit 7**, Donald Hayden Hawkins 30(b)(6) Deposition, p.116:14-25.

36. For example, Shared Services made the decision to reclassify the inspectors as non-exempt employees entitled to premium overtime wages. *Id.*

37. Donald Hayden Hawkins, who largely administered Audubon's day rate pay scheme, holds himself out as a vice president of Audubon Companies.[3]

38. Likewise, Dan Wellon, who was primarily responsible for creating Audubon's day rate pay scheme, is Audubon Companies' general counsel.[4] **Exhibit 3**, Senior Director of HR, Libby Wilkins Rivas Deposition, p. 13:21-14:4; 15:11-16:22; 18:25-20:9; 22:3-25:24; 42:20-44:14; 47:1-7; 54:20-55:12.

### FLSA COVERAGE

39. At all relevant times, Audubon was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

40. At all relevant times, Audubon was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

41. At all relevant times, Audubon was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for

---

[3] https://www.linkedin.com/in/haydenhawkins1 (last visited June 4, 2025).
[4] https://auduboncompanies.com/who-we-are/leadership/ *and* https://www.linkedin.com/in/dan-wellons-04b21611 (last visited June 4, 2025).

commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, pens, paper, etc.—that have been moved in or produced for commerce.

42. At all relevant times, Audubon has had an annual gross volume of sales made or business done of $1,000,000 each year.

43. At all relevant times, Walker and the other Day Rate Workers were Audubon's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

44. At all relevant times, Walker and the other Day Rate Workers were engaged in commerce or in the production of goods for commerce.

**FACTS**

45. Audubon states it employs more than 2,000 employees to provide inspection and "integrated EPC [engineering, procurement, and construction] services with flexibility and expertise" to the energy industry throughout the country, including in Pennsylvania and Ohio.[5]

46. To meet its business objectives, Audubon hires employees, like Walker and the other Day Rate Workers, to carry out this inspection and EPC work for its clients.

47. Audubon hires Walker and the other Day Rate Workers as occasional or on a project-by-project basis and classifies them as "temporary" employees. **Ex. 7**, Hawkins Deposition, p.175:20-25.

48. Audubon composed a chart summarizing the numerous stints of employment (and unemployment) for various temporary employees of Audubon. **Exhibit 2**, Chart-Periods of Employment.

49. As Audubon's chart demonstrates, numerous Day Rate Employees endured brief periods of unemployment less than 45 days. *Id.*

---

[5] https://auduboncompanies.com/who-we-are/about-us/ (last visited June 4, 2025).

50. For example, Richard Allen Clendenning was terminated December 3, 2021 and rehired January 4, 2022, Marshall Davis was terminated August 13, 2021 and rehired September 16, 2021, Brian Ison was terminated October 13, 2022 and rehired October 24, 2022, Joshua King was terminated February 12, 2021 and rehired March 28, 2022, Joshua Nelson was terminated April 2, 2021 and rehired May 3, 2021, Brittany Swarmer was terminated April 8, 2021 and rehired May 3, 2021, and Jordan Cencarik was terminated February 8, 2021 and rehired March 2, 2021 and terminated again on September 3, 2021 and rehired October 4, 2021. *Id.*

51. This means that Audubon generally hires Walker and the other Day Rate Employees for weeks or months at a time, terminates their employment at the conclusion of the relevant project, and potentially rehires them for a subsequent project, which could commence within days, a week, or months. **Ex. 3**, Rivas Depo., p. 33:3-23.

52. Audubon does not pay Walker and the other Day Rate Workers for the interim periods between projects, regardless of the length of such interim period. *Id.* at p. 35:21-36:5.

53. The workweeks immediately preceding and/or following these unpaid interim periods, regularly include workweeks in which Day Rate Employees are paid for only the days they actually work, not any predetermined, weekly-calculated guarantee, in violation of the FLSA and PMWA. *See e.g.*, 29 CFR § 541.602(b)(6); **Ex. 2**, Periods of Employment; and **Exhibit 4**, Partial Workweek Paystubs and Communications.

54. For example, during the workweek ending September 17 , 2021, upon Marshall Davis's rehire, Audubon paid him for only 2 days and during the workweek ending February 12, 2021, Jordan Cencarik was paid for only 2 days due to her termination. **Ex. 2**, Periods of Employment; and **Ex. 4**, Partial Workweeks.

55. Walker and the Day Rate Workers regularly work more than 40 hours in a workweek.

56.    But Audubon does not pay them premium overtime wages when they work more than 40 hours in a workweek.

57.    Instead, Audubon pays Walker and the other Day Rate Workers under its day rate pay scheme. **Ex. 4**, Partial Workweeks; **Ex. 5,** Culver Depo., p. 14:9; p. 35:10-11; p. 46:18-19; p. 51:7-10; p. 55:10-13 (Q. So the only forms of compensation that we're aware of for the inspectors prior to the change was the day rate, correct? A. Yes.); p. 63:16-23 (Q. Okay. And do you know why receipts were not required for any of those payments? A. It was -- that was our pay. It was a standard. We all signed knowing that we were getting that. You know, that was -- that was part of our day rate. But what I will tell you is if guys drove over their 20 miles or their 50 miles or whatever, that was put on a time sheet.); p. 78:5-7; p. 79:2-15.

58.    Specifically, Audubon pays Walker and the other Day Rate Workers a flat sum for the first 10 hours worked in a workday and an "hourly bonus" equal to their day rate divided by 10 hours for each hour worked in excess of 10 in a day.

59.    Even if their job titles and job duties differ somewhat, Walker and the other Day Rate Workers are subject to the same or similar illegal pay practice—Audubon's day rate pay scheme—for similar work.

60.    Audubon applies the same or similar polices to all of its field employees as it applies to inspectors. **Ex. 3**, Rivas Depo., p. 29:12-19; p. 37:12-17.

61.    For example, Walker worked for Audubon in Pennsylvania and Ohio as an environmental inspector from approximately January 2021 through May 2023 and as an assistant chief inspector from approximately May 2023 until February 2025.

62.    Walker worked in both Ohio and Pennsylvania, including Washington County, Pennsylvania, during 2025.

63.     Walker's primary duties consisted of working with third-party contractors and ensuring pipelines are constructed and/or repaired in accordance with established state and federal environmental regulations, standards, procedures, as well as client plans and communicating with chief inspectors and project managers.

64.     Throughout his employment, Audubon paid Walker under its day rate pay scheme.

65.     Specifically, Audubon paid Walker approximately $340 for his first 10 hours worked each day plus an "hourly bonus" of $34 an hour ($340/10 hours) for hours worked beyond 10 in a day.

66.     Audubon's General Counsel, Dan Wellons, designed, implemented, and administered this pay scheme, including by drafting employee offer letters, drafting the employee handbook, and classifying all field employees as temporary employees. **Ex. 3**, Rivas Depo., p. 13:8-14:3; p. 15:11-16; p. 15:21-22; p. 18:21-19:18; p. 22:3-18; p. 33:13; p. 48:5-49:11.

67.     Audubon required Walker to report the hours he worked.

68.     Audubon's records show the hours Walker worked each workday and workweek.

69.     Audubon set Walker's regular work schedule for compensation purposes to be 10 hours a day and 4 days a workweek.

70.     But Audubon's Senior Director of HR also admits that their hours are irregular. *Id.* at p. 27:21-23.

71.     And its Chief Inspector stated that Audubon bids on jobs based on 6-day workweeks. **Ex. 5,** Culver Depo., p. 35:25-36:6.

72.     In fact, Walker typically worked 10 to 12 hours a day and 6 to 7 days a week (60 to 84 hours a workweek)

73.     When Walker worked more than 10 hours in a day or 40 hours in a week, Audubon paid him "straight time," not premium overtime, for those additional hours worked.

74.     And Audubon provided Walker no vacation days, sick time, PTO, holiday pay, or any other form of paid leave. **Ex. 3**, Rivas Depo., p. 30:2-23.; **Ex. 7**, Hawkins Depo., p. 132:20-133:14.

75.     If illness or health issues prevented Walker from working, he did not receive wages for this time away from work.

76.     Indeed, for much of May 2024, Walker could not work due to serious health concerns and Audubon did not pay him for the time he could not physically work.

77.     Likewise, if a worksite was closed on a given day and prevented Walker from working, Audubon would not pay him, despite Walker being ready, willing, and able to work. **Ex. 4**, Partial Week Paystubs and Communications.

78.     Despite knowing Walker regularly worked overtime hours, Audubon never paid him premium overtime wages.

79.     Audubon pays its other Day Rate Workers according to the same or similar day rate pay scheme it imposed on Walker.[6]

80.     Like Walker, Audubon claims the other Day Rate Workers' standard schedules to be 10 hours a day and 4 days a week, but the typical schedule is truly 6 days a week. *Contra* **Ex. 5**, Culver Depo., p. 71:2-4 ("I asked them [Day Rate Workers]. I said when was the last time you had to use that four-day guarantee, and none of them could think of when they ever had to use it."); p. 93:25-94:2 ("[M]ore often than not we work six days a week."); **Ex. 3**, Rivas Depo., p. 11:21-25 (Q. How many days are you -- what increment of days are you familiar with being in a guarantee? A. I have seen four days, five days, six days. Q. And do you know how those days are set? A. I do not.).

---

[6] Audubon modified its pay structure for at least some field employees around March 2025 and began paying them time and a half overtime wages for hours worked in excess of 40 a week, finally recognizing that these field employees are non-exempt under the FLSA and analogous state law(s). It is unclear whether Audubon changed their practices as to all field employees.

81.     Audubon also claims that at least some Day Rate Workers' "standard" schedules were 2 10-hour days a week. **Exhibit 6**, 2-Day Guarantee Offer Letter.

82.     Notably, despite labeling such 2-day guarantee employees as overtime exempt, Audubon set the standard day rate compensation to total only $550 in a week, which is well below the FLSA's $684 a week exempt salary threshold, even for compensation paid on a true, salary basis. *Id.*

83.     So even if such employees were paid on a salary basis (which is not the case), such employee would still not be exempt from premium overtime requirements under the FLSA and PMWA because Audubon did not satisfy the salary threshold.

84.     Like Walker, Audubon pays its other Day Rate Workers day rates it asserts compensate them for the first 10 hours of daily work.

85.     But like Walker, the other Day Rate Workers regularly work more than 10 hours a day and 4 days a week.

86.     Indeed, like Walker, the other Day Rate Workers typically work 10 to 12+ hours a day for 6 to 7 days a week (or 60 to 84+ hours a workweek).

87.     And, just as with Walker, Audubon requires its other Day Rate Workers to report their hours worked to Audubon in the same or similar manner.

88.     Thus, just as Audubon has records of the hours Walker worked, Audubon also has records of the Day Rate Workers' hours.

89.     Just as with Walker, when the other Day Rate Workers work more than 10 hours a day, Audubon pays them "straight time" pay for their additional hours worked.

90.     And like Walker, Audubon does not provide the other Day Rate Workers with any form of paid leave and deducts from their wages for absences. **Ex. 4**, Partial Workweek Paystubs and Communications.

11

91. Like Walker, if a job site is closed that prevents them from working, the other Day Rate Workers are not paid, despite being ready, willing, and able to work. *Id.*

92. Under its day rate pay scheme, Audubon does not guarantee the Day Rate Workers compensation calculated on a weekly or less frequent basis and thus deprives them of the "time and a half" overtime premiums for the hours in excess of 40 in a workweek, in violation of the FLSA and PMWA.

93. Audubon has never paid Walker and the other Day Rate Workers on a "salary basis." **Ex. 3**, Rivas Depo., p. 10:23-25; p. 11:7-11; **Ex. 5**, Culver Depo., p. 14, 9; p. 35:10-11; p. 46:18-19; p. 51:7-10; p. 55:10-13; p. 63:16-23; p. 78:5-7; p. 79:2-15.

94. Audubon does not pay Walker and its other Day Rate Workers a guaranteed sum on a weekly or less frequent basis that is not subject to reduction based on the quality or quantity of work.

95. Audubon does not pay Walker and its other Day Rate Workers a guaranteed sum on a weekly or less frequent basis that compensate them for the work done during a typical workweek.

96. Walker's and the other Day Rate Workers' compensation can only be determined by tabulating the number of days and/or hours worked within a given workweek.

97. The workweek is not the fundamental unit around which Audubon's wages are structured.

98. If Walker and the other Day Rate Workers do not work, they do not get paid. *See* **Ex. 6**, 2-Day Guarantee; **Ex. 4,** Partial Workweek Paystubs and Communications.

99. And when the project the Audubon assigned the Day Rate Workers to ends, Audubon terminates their employment for an indeterminate period of time, ranging from a few days up to months, only to hire such Day Rate Workers back again when Audubon feels it can again profit from their services. **Ex. 2**, Periods of Employment; **Ex. 4**, Partial Workweek Paystubs and Communications.

100.    Exhibit 7 lists the dates numerous Day Rate Employees were hired and fired, as well as the timesheets and pay records for the corresponding workweeks for these occasional, project based, temporary employees. *Id.*; **Ex. 3**, Rivas Depo., p. 29, 12-19.

101.    This practice of regularly hiring and firing the Day Rate Workers results in these employees receiving day rate wages for only a day or two during numerous workweeks, but also further eviscerates these employees' ability to rely on guaranteed compensation for a regular week's worth of work. **Ex. 2**, Periods of Employment; **Ex. 4**, Partial Workweek Paystubs and Communications.

102.    Audubon employed its day rate pay scheme (with greater consistency and longevity than it employed the Day Rate Workers) to save money by avoiding paying the Day Rate Employees overtime wages and paying a true weekly guarantee for days and hours they did not work, whether due to illness, vacation, or even because Audubon fired them.

103.    But even if Audubon's day rate pay scheme had provided the Day Rate Workers a guaranteed sum on a weekly or less frequent basis (it did not), the "salary" would not bear a reasonable relationship to their actual weekly earnings.

104.    Thus, Audubon never paid Walker and its other Day Rate Workers on a "salary basis." *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 143 S. Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

105.    Because Audubon uniformly fails to pay Walker and the other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime wages.

106.    But Audubon does not pay Walker and the other Day Rate Workers overtime wages when they work more than 40 hours in a workweek.

107.    Audubon thus fails to pay the Day Rate Workers required overtime wages when they work more than 40 hours in a workweek, in violation of the FLSA and PMWA.

108.    Likewise, Audubon fails to pay its Day Rate Workers these earned overtime wages on their regular paydays and/or following the termination of their employment in violation of the WPCL.

109.    Because Audubon fails to pay Walker and its other Day Rate Workers on a "salary basis," they are all non-exempt employees entitled to overtime.

110.    In addition to failing to pay Walker and the Day Rate Workers on a "salary basis," these employees are also owed overtime wages because they primarily perform non-exempt job duties.

111.    Indeed, workers subject to Audubon's day rate pay scheme are similarly situated for purposes of the FLSA. Order & Reasons Granting Motion for Court-Authorized Notice, *Cencarik v. Audubon Field Solutions*, No. 22-3566 (E.D. La. June 14, 2023), ECF No. 31.

112.    Walker's and the Day Rate Workers' primary duties do not include supervising other Audubon employees.

113.    Walker's and the Day Rate Workers' primary duties are not management.

114.    Walker's and the Day Rate Workers' primary duties do not require the exercise of independent judgment or discretion with respect to matters of significance.

115.    Rather, Walker's and the Day Rate Workers' primary duties are routine and largely governed by standardized plans, procedures, and checklists created by Audubon.

116.    Virtually every job function is predetermined by Audubon, including the equipment used, work locations, clients, the schedule of work, and related work duties.

117.    In sum, Walker and the Day Rate Workers are non-exempt employees entitled to overtime wages.

118.    But Audubon does not pay Walker and the other Day Rate Workers required overtime wages when they work more than 40 hours in a week in violation of the FLSA and Pennsylvania law.

14

## CLASS & COLLECTIVE ACTION ALLEGATIONS

119.    Like Walker, the other Day Rate Workers are victimized by Audubon's day rate pay scheme.

120.    Other Day Rate Workers worked with Walker and indicated they were paid in the same manner, performed similar work, and were subject to Audubon's same or similar day rate pay scheme.

121.    Based on his experience with Audubon, Walker is aware Audubon's day rate pay scheme was imposed on other Day Rate Workers.

122.    The Day Rate Workers are similarly situated in the most relevant respects.

123.    Even if their job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime.

124.    Any relevant exemption defenses would require Audubon to pay the Day Rate Workers on a "salary basis."

125.    Because Audubon fails the "salary basis" test with respect to the Day Rate Workers, the specific job duties they perform are largely irrelevant.

126.    Therefore, the specific job titles or job locations of the Day Rate Workers do not prevent class or collective treatment.

127.    Rather, Audubon's day rate pay scheme renders Walker and the other Day Rate Workers similarly situated for the purposes of determining their right to overtime pay.

128.    Audubon's records reflect the number of days and/or hours the Day Rate Workers worked each week.

129.    Audubon's records also show it paid the Day Rate Workers a day rate with no overtime wages when they worked more than 40 hours in a workweek.

130.    The back wages owed to Walker and the other Day Rate Workers can therefore be calculated using the same formula applied to the same records.

15

131.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Audubon's records, and there is no detraction from the common nucleus of liability facts.

132.    Therefore, the issue of damages does not preclude class or collective treatment.

133.    Walker's experiences are therefore typical of the experiences of the other Day Rate Workers.

134.    Walker has no interest contrary to, or in conflict with, the other Day Rate Workers that would prevent class or collective treatment.

135.    Like each Day Rate Worker, Walker has an interest in obtaining the unpaid wages owed under federal and Pennsylvania law.

136.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

137.    Absent this class and collective action, many Day Rate Workers will not obtain redress for their injuries, and Audubon will reap the unjust benefits of violating the FLSA and Pennsylvania law.

138.    Further, even if some of the Day Rate Workers could afford individual litigation, it would be unduly burdensome to the judicial system.

139.    Indeed, the multiplicity of actions would create a hardship to the Day Rate Workers, the Court, and Audubon.

140.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Day Rate Workers' claims.

141.    The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

142.    Among the common questions of law and fact are:

a.  Whether Audubon's day rate pay scheme deprived the Day Rate Workers of overtime wages when they worked more than 40 hours in a workweek in violation of the FLSA and PMWA;

b.  Whether Audubon's day rate pay scheme deprived the Day Rate Workers of earned overtime wages on their regular paydays and/or following the termination of their employment in violation of the WPCL;

c.  Whether Audubon's decision to misclassify its Day Rate Workers as exempt was made in good faith;

d.  Whether Audubon's decision not to pay its Day Rate Workers overtime was made in good faith;

e.  Whether Audubon's failure to pay its Day Rate Workers earned wages was the result of a *bona fide* dispute; and

f.  Whether Audubon's violations were willful.

143.  Audubon's day rate pay scheme deprived Walker and the other Day Rate Workers of the overtime wages they are owed under federal and Pennsylvania law.

144.  There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

145.  The Day Rate Workers are known to Audubon and can be readily identified and located through Audubon's business and personnel records.

**AUDUBON'S VIOLATIONS WERE WILLFUL**

146.  Audubon knew it was subject to the FLSA's and PMWA's overtime provisions. **Exhibit 3**, Rivas Depo., p. 47:20-48:14.

17

147.     Audubon knew the FLSA and PMWA required it to pay non-exempt employees, including the Day Rate Workers, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *Id.*

148.     Audubon knew each Day Rate Worker worked more than 40 hours in at least one workweek during the relevant period.

149.     Audubon knew it paid its Day Rate Workers on a daily basis. **Ex. 5**, Culver Depo., p. 14:9; p. 35:10-11; p. 46:18-19; p. 51:7-10; p. 55:10-13; p. 63:16-23; p. 78:5-7; p. 79:2-15.

150.     Audubon knew it paid its Day Rate Workers a day rate and no premium overtime wages for their hours worked over 40 in a workweek. **Ex. 3**, Rivas Depo., p. 47:15-19.

151.     Audubon knew it did not pay its Day Rate Workers on a "salary basis."

152.     Audubon knew it did not pay its Day Rate Workers any guaranteed sum on a weekly or less frequent basis that was not subject to reduction based on the quality or quantity of work. *See* **Ex. 4**, Partial Workweek Paystubs and Communications.

153.     Audubon knew that any purported "salary" it paid the Day Rate Workers was not "reasonably related" to their actual earnings.

154.     Thus, Audubon knew its day rate pay scheme did not satisfy the "salary basis" test.

155.     Audubon knew it needed to pass the "salary basis" test to qualify for the exemptions it claimed with respect to its Day Rate Workers.

156.     Nonetheless, Audubon uniformly misclassified its Day Rate Workers as exempt and refused to pay them overtime.

157.     Audubon's HR has relied on licensed legal counsel to ensure compliance with applicable wage and hour law. **Ex.**

158.    **3**, Rivas Depo., p. 47:1-7 ("Q. What have you done since then, if anything, to investigate the wage and hour policies and procedures at Audubon applicable to inspectors like Mr. Owen? A. I have relied on my legal counsel, Dan Wellons.").

159.    Audubon knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and PMWA.

160.    Further, Audubon and/or its clients have been sued on numerous occasions for failing to pay required overtime wages, including previously failing to pay overtime to Walker, under the same or similar Day Rate Pay scheme at issue in this Complaint. *See e.g.*, *Owen v. Audubon Field Solutions, LLC*, No. 2:2024-cv-00215 (D.N.M.); *Vera v. Audubon Field Solutions, LLC*, No. 4:24-cv-04534 (S.D. Tex.); *Cencarik v. Audubon Field Solutions*, No. 2:22-cv-03566-BSL-JVM (E.D. La.); *Walker v. Marathon Petroleum Corporation, et al.*, No. 2:22-cv-01273-NR (W.D. Pa.); *Beard v. Audubon Field Solutions, LLC*, No. 2:16-cv-12354-NJB-DEK (E.D. La.); *Bruchi, et al. v. Audubon Field Solutions, LLC*, No. 2:16-cv-15755-ILRL-KWR (E.D. La.).

161.    Audubon knowingly, willfully, and/or in reckless disregard carried out its day rate pay scheme that systematically deprived the Day Rate Workers of overtime wages for their hours worked over 40 in a workweek, in violation of the FLSA.

<u>COUNT I</u>
**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

162.    Walker brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

163.    Audubon violated, and is violating, the FLSA by employing non-exempt employees (Walker and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for the hours they worked after 40 in a workweek.

19

164.     Audubon's unlawful conduct harmed Walker and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

165.     Accordingly, Audubon owes Walker and the other FLSA Collective Members the difference between the wages actually paid and the overtime wages actually earned.

166.     Because Audubon knew, or showed reckless disregard for whether, its day rate pay scheme violated the FLSA, Audubon owes Walker and the other FLSA Collective Members these wages for at least the past 3 years.

167.     Audubon is also liable to Walker and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

168.     Finally, Walker and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA**
**(PENNSYLVANIA CLASS)**

169.     Walker brings his PMWA claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

170.     Audubon's conduct violates the PMWA (43 PA. STAT. §§ 333.101, *et seq.*).

171.     At all relevant times, Audubon was subject to the PMWA because Audubon was (and is) an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

172.     At all relevant times, Audubon employed each Pennsylvania Class Member as its covered "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

173.     The PMWA requires employers, like Audubon, to pay non-exempt employees, including Walker and the other Pennsylvania Class Members, overtime at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 43 PA. STAT. § 333.104(c); *see* 34 PA. CODE §§ 231.41-43.

174. By imposing its day rate pay scheme on Walker and the other Pennsylvania Class Members, Audubon violated 43 PA. STAT. § 333.104(c) and/or 34 PA. CODE §§ 231.41-43.

175. Specifically, Audubon violated, and is violating, the PMWA by employing non-exempt employees (Walker and the other Pennsylvania Class Members) for workweeks longer than 40 hours without paying them overtime at rates of at least 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. *See* 43 PA. STAT. § 333.104(c); *see also* 34 PA. CODE §§ 231.41-43.

176. Audubon's unlawful conduct harmed Walker and the other Pennsylvania Class Members by depriving them of the overtime wages they are owed.

177. Accordingly, Audubon owes Walker and the other Pennsylvania Class Members the difference between the wages actually paid and the overtime wages actually earned, plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 333.113.

178. Finally, Walker and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 333.113.

## COUNT III
### FAILURE TO PAY EARNED WAGES UNDER THE WPCL
### (PENNSYLVANIA CLASS)

179. Walker brings his WPCL claim as a class action on behalf of himself and the other Pennsylvania Class Members pursuant to FED. R. CIV. P. 23.

180. Audubon's conduct violates the WPCL (43 PA. STAT. §§ 260.1, *et seq.*).

181. At all relevant times, Audubon was subject to the WPCL because Audubon was (and is) an "employer" within the meaning of the WPCL. *See* 43 PA. STAT. § 260.2a.

182. At all relevant times, Audubon employed Walker and each Pennsylvania Class Member as its covered "employees" within the meaning of the WPCL.

183. The WPCL requires employers, like Audubon, to pay employees, including Walker and the other Pennsylvania Class Members, all wages (including overtime) earned, due, and owing to them

on their regular payday(s) and following the termination of their employment. 43 PA. STAT. §§ 260.3 and 260.5.

184.    Audubon violated, and is violating, the WPCL by depriving its Pennsylvania Class Members of the overtime wages earned, due, and owing to them on their regular paydays and/or following the termination of their employment. *See* 43 PA. STAT. §§ 260.3 and 260.5.

185.    Walker's and the other Pennsylvania Class Members' earned wages have remained unpaid for more than 30 days from the date they were earned, due, and payable.

186.    Audubon's unlawful conduct harmed Walker and the other Pennsylvania Class Members by depriving them of the earned wages they are owed.

187.    Audubon's failure to pay Walker and the other Pennsylvania Class Members earned wages was not the result of a *bona fide* dispute.

188.    Rather, Audubon knowingly failed to pay earned wages to Walker and the other Pennsylvania Class Members.

189.    Accordingly, Audubon owes Walker and the other Pennsylvania Class Members their unpaid earned wages plus prejudgment interest and all available penalty wages. *See* 43 PA. STAT. § 260.9a.

190.    Audubon also owes Walker and the other Pennsylvania Class Members liquidated damages in an amount equal to 25% of their unpaid wages. *See* 43 PA. STAT. § 260.10.

191.    Finally, Walker and the other Pennsylvania Class Members are entitled to recover their reasonable attorney's fees and costs incurred in this action. *See* 43 PA. STAT. § 260.9a(f).

### JURY DEMAND

192.    Walker demands a trial by jury on all Counts.

22

### RELIEF SOUGHT

WHEREFORE, Walker, individually and on behalf of the other Day Rate Workers, seeks the following relief:

a.  An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing a written notice of consent;

b.  An Order certifying this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c.  An Order appointing Walker and his counsel to represent the interests of the Day Rate Workers;

d.  An Order finding Audubon liable to Walker and the other FLSA Collective Members for unpaid overtime wages owed under the FLSA plus liquidated damages in an amount equal to their unpaid wages;

e.  An Order finding Audubon liable to Walker and the other Pennsylvania Class Members for unpaid overtime wages owed under the PMWA plus all available penalty wages;

f.  An Order finding Audubon liable to Walker and the other Pennsylvania Class Members for unpaid earned wages owed under the WPCL plus liquidated damages in an amount equal to 25% of their unpaid wages;

g.  A Judgment against Audubon awarding Walker and the other Day Rate Workers all their unpaid wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, PMWA, and WPCL;

h.  An Order awarding attorney's fees, costs, and expenses;

23

i.      Pre- and post-judgment interest at the highest applicable rates; and

j.      Such other and further relief as may be necessary and appropriate.

Dated: June 5, 2025                                      Respectfully submitted,

                                                        JOSEPHSON DUNLAP LLP

                                                        By: /s/ Andrew W. Dunlap
                                                            **Andrew W. Dunlap**
                                                            TX Bar No. 24078444
                                                            **Michael A. Josephson**
                                                            PA ID No. 308410
                                                            11 Greenway Plaza, Suite 3050
                                                            Houston, Texas 77046
                                                            Phone: (713) 352-1100
                                                            Fax:    (713) 352-3300
                                                            mjosephson@mybackwages.com
                                                            adunlap@mybackwages.com

                                                            **Richard J. (Rex) Burch**
                                                            TX Bar No. 24001807
                                                            **BRUCKNER BURCH PLLC**
                                                            11 Greenway Plaza, Suite 3025
                                                            Houston, Texas 77046
                                                            Phone: (713) 877-8788
                                                            Fax:    (713) 877-8065
                                                            rburch@brucknerburch.com

                                                            **Joshua P. Geist**
                                                            PA ID No. 85745
                                                            **William F. Goodrich**
                                                            PA ID No. 30235
                                                            **GOODRICH & GEIST, PC**
                                                            3634 California Avenue
                                                            Pittsburgh, Pennsylvania 15212
                                                            Phone: (412) 766-1455
                                                            Fax:    (412) 766-0300
                                                            josh@goodrichandgeist.com
                                                            bill@goodrichandgeist.com

                                                            **ATTORNEYS FOR WALKER
                                                            & THE DAY RATE WORKERS**

24