## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM WALKER, *Individually and For*
*Others Similarly Situated,*

        Plaintiff,

        v.

AUDUBON COMPAIES, LLC, AUDUBON
FIELD SOLUTIONS, LLC, *and* AUDUBON
ENGINEERING COMPANY, L.P.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 2:25 CV 764
Magistrate Judge Maureen P. Kelly

Re: ECF No. 13

## MEMORANDUM OPINION

**MAUREEN KELLY, United States Magistrate Judge**

Plaintiff William Walker ("Walker") brings claims against Defendants Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. (collectively, "Audubon"), for their failure to pay wages that he and other employees like him are owed. ECF No. 1. Specifically, Walker alleges that Audubon did not pay overtime at time and a half their regular rate of pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act, ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law, ("WPCL") 43 P.S. § 260.1, *et seq.* Id.

Audubon responded to the Complaint with the pending Motion to Dismiss or, in the alternative, Motion to Transfer Venue. ECF No. 13. Audubon first challenges the Court's exercise of personal jurisdiction over each of the Audubon entities because all are Texas and Louisiana limited liability companies headquartered in Louisiana. Id., see also ECF No. 1 at ¶¶ 20-26. Audubon next moves to dismiss Walker's PMWA and WPCL claims for failure to state a claim. In the alternative, Audubon requests that the Court transfer this action to the Southern District of

Texas, Houston Division, or to the Eastern District of Louisiana, New Orleans Division. For the reasons set forth in this Memorandum, the Motion to Dismiss will be granted in part, denied in part, and the alternative Motion to Transfer will be denied.[1]

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Audubon is an employer engaged in multi-state engineering, procurement, and construction services for industrial operators.[2] ECF No. 1 ¶ 45. To meet its business objectives, Audubon employs workers including Walker and other Day Rate Workers throughout the country, including in Pennsylvania and Ohio. Id. ¶ 46.

Audubon employed Walker as an environmental inspector in Pennsylvania and Ohio from approximately January 2021 until February 2025. Id. ¶ 17. Audubon classified Walker and other Day Rate Workers as "temporary" employees hired on a project-by-project basis. Id. ¶ 47. Audubon's scheduling and classification system meant that Walker and other Day Rate Workers were unemployed for brief periods of less than 45 days, and potentially unemployed only for days or weeks. Id. ¶¶ 49, 51.  When reassigned to a new project, Audubon paid its Day Rate Workers only for the days worked, with no predetermined, weekly-calculated guarantee. Id. ¶ 53.

Despite Audubon's project scheduling system, Walker and other Day Rate Workers regularly worked more than 40 hours in a work week. Id. ¶ 55. Audubon routinely bid on jobs based on 6-day work weeks. Thus, Walker typically worked 10-12 hours a day and 6-7 days a week (60-84 hours a workweek). Id. ¶ 72. Audubon did not pay Walker or other Day Rate Workers

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF Nos. 58 and 59.

[2] The facts are taken from the Complaint and accepted as true at this stage of the litigation. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (When presented with a motion to dismiss, "[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

premium overtime wages when they worked more than 40 hours in a workweek. Id. ¶ 56. Instead, Audubon used a day rate pay structure that provided a flat sum for the first 10 hours worked in a workday and an "hourly bonus" equal to their day rate divided by 10 hours for each hour worked in excess of 10 in a day. Id. ¶¶ 56-58. Thus, Audubon paid Walker $340 for his first 10 hours worked each day plus an hourly bonus of $34 per hour for hours worked beyond 10 in a day. Id. ¶ 65. Audubon also did not provide Walker or other Day Rate Workers vacation days, sick days, holiday pay or any other form of paid leave. The pay structure was included in employee offer letters and in Audubon's employee handbook. Id. ¶ 66.

Audubon established 4-day and 2-day schedules that also do not account for overtime hours worked in a week. In the case of 2-day schedules, Audubon paid compensation below the FLSA-exempt threshold despite the number of hours worked in a given week. Id. ¶¶ 74-83. Walker alleges that Audubon's pay and work schedules were structured to avoid paying overtime wages in violation of federal and state law. Id. ¶¶ 101-18. To remedy Audubon's alleged violations, Walker brings this potential class and collective action with the consent of several Audubon Day Rate Workers. ECF Nos. 4, 10, 39.

Audubon responds to the Complaint with the pending Motion to Dismiss or, in the alternative, Motion to Transfer, and brief in support. ECF Nos. 15 and 16. Audubon contends that the Court cannot exercise general or specific personal jurisdiction over any Audubon entity as to claims by Walker, or by many opt-in plaintiffs who are not residents of Pennsylvania and cannot otherwise establish a connection between their claims and Pennsylvania. ECF No. 14 at 9, 11-23. Audubon also argues that Walker cannot state a claim under the PMWA or WPCL because he "never worked in nor was he based out of Pennsylvania" and, as to his WPCL claim, he cannot establish a contractual obligation to receive pay for uncompensated activities. Id. at 23-29. Finally,

Audubon moves to transfer this case to a federal district court in Louisiana or Texas in service of public and private interests. Id. at 29-38.

Walker filed his responsive brief, with exhibits supporting his claim that he worked in Pennsylvania on behalf of Audubon, and challenging the factual and legal basis for Audubon's arguments. ECF No. 30.

Audubon filed a reply brief with the declaration of a manager who concedes that he assigned Walker to work in Pennsylvania for at least 6 weeks. ECF Nos. 46, 46-1 ¶ 14. With that concession, Audubon now challenges the sufficiency of Walker's short-term assignment to establish personal jurisdiction in Pennsylvania or as a basis to oppose transfer of this action. ECF No. 33. Walker filed a sur-reply in opposition to the Motion to Dismiss. ECF No. 53. Audubon filed a response to the sur-reply. ECF No. 55.

The Motion to Dismiss or, in the alternative Motion to Transfer Venue is ripe for consideration.

## II.    DISCUSSION

### A.    Personal Jurisdiction

#### 1.    Applicable Legal Standard

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." Strata Skin Scis., Inc. v. LaserOptek Am. Corp., et al., No. 24-4138, 2026 WL 181486, at *2 (E.D. Pa. Jan. 21, 2026) (quoting Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004)). Where, as here, the Court declines to hold an evidentiary hearing, and declines a request for jurisdictional discovery, the "plaintiff[] need only establish a *prima facie* case of personal jurisdiction" and is "entitled to have [his] allegations taken as true." Colur World, LLC v. Supmedic, Inc., 801 F. Supp. 3d 524,

529 (E.D. Pa. 2025) (quoting O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3rd Cir. 2007)).

To establish a prima facie case, a plaintiff must present sworn affidavits or other competent evidence. "[A]t no point may a plaintiff rely on the bare pleadings alone" to withstand a defendant's motion to dismiss for lack of in personam jurisdiction. Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 66 n. 9 (3d Cir. 1984)). In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 735 F. Supp. 2d 277, 307 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012) (citing Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 722 (E.D. Pa. 1999).

If the court denies the motion to dismiss because the plaintiff bears its burden at the motion to dismiss stage, the moving party may later raise the issue of the exercise of personal jurisdiction. Whether at a pre-trial hearing or at trial, the nonmoving party must establish by a preponderance of the evidence that the exercise of personal jurisdiction over the moving party is proper. Id.

### 2.    Personal Jurisdiction for Claims Presented

Audubon moves to dismiss this action for lack of personal jurisdiction for two reasons. First, Audubon contends Walker "never worked in" and was not based in Pennsylvania. ECF No. 16 at 11. Second, Pennsylvania cannot be considered Audubon's home state. Thus, Audubon argues that there are no facts to support the constitutional exercise of the Court's general personal jurisdiction over it. The Court disagrees.

The first basis for dismissal is readily disposed of at this initial stage of the litigation. As alleged by Walker and conceded by Audubon's Manager of Inspection, Walker worked in Pennsylvania for Audubon from October 4, 2024 through November 22, 2024. ECF No. 33-1 at 4.[3] As to the second argument, Audubon expressly consented to general personal jurisdiction by

---

[3] The Court notes Audubon's obligations under Fed. R. Civ. P. 11(b) (imposing a duty on an attorney who presents a motion to conduct reasonable inquiry that a defense is warranted on the evidence and that factual assertions "will

registering to do business in Pennsylvania. Therefore, the Court's exercise of jurisdiction does not violate the United States Constitution.

The United States Supreme Court identified three types of personal jurisdiction over an out-of-state corporate defendant that comport with the Due Process Clause of the United States Constitution. Mallory v. Norfolk S. Ry. Co., 600 U.S. 122 (2023). First, "specific jurisdiction" permits suits that "'arise out of or relate to'" a corporate defendant's activities in the forum State. Second, "general jurisdiction" allows all kinds of suits against a corporation, but only in States where the corporation is incorporated or has its "principal place of business." Id. at 137 (internal citations omitted). And third, general personal jurisdiction exists when a corporation consents to jurisdiction to conduct business in the forum. Id. at 138.

In Mallory, Norfolk Southern challenged general personal jurisdiction based on consent as a violation of its due process rights under the Fourteenth Amendment. Norfolk Southern argued that its rights were violated by Pennsylvania's statutory requirement that an out-of-state corporation consent to general personal jurisdiction as a condition to conduct business within the Commonwealth, even in cases where there is no direct connection between Pennsylvania, the parties, or the claim. Id. at 127; see 42 Pa. Cons. Stat. § 5301(a)(2)(i) (requiring foreign corporations who register to do business in Pennsylvania to submit to general personal jurisdiction of Pennsylvania state courts).

A majority of five sitting Justices held that, in keeping with controlling precedent, the statute did not deny an out-of-state corporate defendant due process of law. Id. at 134 (Gorsuch,

---

likely have evidentiary support"). This is the second case before the Court that Audubon asserted that the Plaintiff "never" worked in Pennsylvania, and this is the second case where Audubon quickly retracted its assertion when confronted with its own employment records that reflect Audubon's assignment of the named Plaintiff in Pennsylvania. See Murphy v. Audubon Companies, LLC., et al., No.2:25-cv-815, ECF Nos. 26 and 33. As in Murphy, Audubon's records establishing Walker's employment in Pennsylvania, including text messages with assignments and payroll records, were generated by Audubon employees and thus equally available to Audubon prior to filing its Motion to Dismiss. See ECF No. 46-1 ¶¶ 14-17.

Thomas, Alito, Sotomayor, and Jackson, JJ. joined in opinion of the Court with respect to Part III-B) (citing Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Min. & Mill. Co., 243 U.S. 93 (1917)). Pennsylvania's grant of general jurisdiction as a consequence of registration is explicit and, in exchange, registration confers benefits. To that end, Pennsylvania law provides that upon compliance with the registration process, an out-of-state corporation "'shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties, and penalties … imposed on domestic entities.'" Id. at 134 (quoting 15 Pa. Cons. Stat. § 402(d)). By registering, as noted by a plurality of the Court, Norfolk "presumably … thought the benefits outweighed the costs." Id. at 144.

Audubon argues that Mallory is nonbinding and therefore not controlling. ECF No. 33 at 9; ECF No. 52 at 1. But a majority of the Mallory Court held that Pennsylvania Fire controls and remains good law. Thus, Audubon's arguments to the contrary, it is well settled that Pennsylvania's registration statute does not deny a defendant due process of law. Mallory, 600 U.S. at 135, 150.

Audubon concedes it registered to do business as a foreign corporation in Pennsylvania and that it assigned employees, including Walker and other inspectors like him, to work in Pennsylvania.[4] ECF No. 14 at 15; ECF No. 33-1 ¶ 4 ("From Friday July 7, 2025 through September 12, 2025, Walker worked on the MPLX Green Valley LW Safety Inspection Project … which is located in Pennsylvania."). Therefore, Audubon consented to the Court's exercise of general personal jurisdiction.

---

[4] The Court takes judicial notice of Audubon's recent identification of three other FLSA cases brought by its employees against Audubon or its customers arising from Audubon's placement of inspectors in the Commonwealth of Pennsylvania. See Defendant's Motion to Quash Subpoena, Owen v. Audubon Field Solutions, Inc., No. 25-0070 (E.D. Pa. Dec. 18, 2025) (Dkt. No. 1 at 5).

To avoid its voluntary consent to general jurisdiction, Audubon argues that "the Court should follow Supreme Court Justice Alito's analysis" from his concurring opinion in Mallory and hold that Pennsylvania's foreign corporation registration law violates the dormant Commerce Clause of the United States Constitution.[5] ECF No. 16 at 16; ECF No. 33 at 9. Audubon contends that Justice Alito's analysis has particular sway where the claims at issue "are made by non-Pennsylvania FLSA collective members that have no connection to Pennsylvania." In such situations, "the 'practical effect' of Section 5301 is to disadvantage and discriminate against out-of-state companies such as Defendants to the benefit of in-state competitors 'by forcing [Defendants] to increase their exposure to suits on all claims in order to access Pennsylvania's market while Pennsylvania companies generally face no reciprocal burden for expanding operations into another State.'" Id. at 16 (citing Mallory, 600 U.S. at 161 (Alito, J., concurring)). Under the facts presented, the Court is not persuaded that application of Pennsylvania's registration statute is unconstitutional under the Commerce Clause.

Briefly, the Commerce Clause grants Congress the power to regulate commerce between the states. The Commerce Clause "has long been understood to have a 'negative aspect' that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." Hegna v. Smitty's Supply, Inc., No. 16-3613, 2017 WL 2563231, at *4 (E.D. Pa. June 13, 2017) (quoting Tr-M Grp., LLC v. Sharp., 638 F.3d 406, 418 (3d Cir. 2011) (in turn quoting Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or., 511 U.S. 93, 98 (1994)). Thus, "state regulations may not discriminate against interstate commerce; and … States may not impose undue burdens on interstate commerce." S. Dakota v. Wayfair, 585 U.S. 162, 173 (2018).

---

[5] No other Justice joined in Justice Alito's concurring opinion.

8

Justice Alito posits that, "[t]here is reason to believe that Pennsylvania's registration-based jurisdiction law discriminates against out-of-state companies. But at the very least, the law imposes a 'significant burden' on interstate commerce by '[r]equiring a foreign corporation … to defend itself with reference to all transactions,' including those with no forum connection." Mallory, 600 U.S. at 161.

Audubon, like Justice Alito, relies on Davis v. Farmers' Co-op Equity Co., 262 U.S. 312 (1923). In Davis, a Kansas corporation filed suit in Minnesota against another Kansas corporation for a claim arising entirely in Kansas. Jurisdiction was based on a Minnesota statute that compelled a "foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state." Id. at 315. The Supreme Court held that under the circumstances before it, the statute imposed "a serious and unreasonable burden, which renders the statute obnoxious to the commerce clause." Id. The Supreme Court distinguished Davis just eleven years later in Int'l Mill. Co. v. Columbia Transp. Co., 292 U.S. 511 (1934), and observed that Davis "was confined narrowly within the bounds of its own facts" because, among other reasons, "[t]he cause of action had no relation to any local activity." Id. at 517; see also AK Steel Corp. v. PAC Operating Ltd. P'ship., No. 15-9260, 2017 WL 3314294, at *6 (D. Kan. Aug. 3, 2017) (no discrimination against interstate commerce where party's local activities demonstrate a relationship to jurisdiction).

Here, there is no dispute that Walker worked for Audubon in Pennsylvania for a portion of the time at issue. Thus, Walker presents a claim arising from Audubon's alleged wage law violations in Pennsylvania and, unlike Davis, the cause of action bears a relationship with Audubon's local activity. Audubon likely weighed the economic benefits of its ongoing in-state activity and determined that consent to general jurisdiction did not impose an undue burden. As applied to the facts alleged in the Complaint and the record before the Court, Pennsylvania's

general personal jurisdiction statute does not violate the dormant Commerce Clause. The Motion to Dismiss Walker's claims for lack of personal jurisdiction is denied without prejudice.

Audubon also contends that under Third Circuit precedent, the Court lacks specific personal jurisdiction over the claims of employees who seek to opt-in to the suit but who cannot demonstrate that their claims arise out of Audubon's minimum contacts with Pennsylvania. ECF No. 16 at 21-23 (citing Fischer v. Fed. Express Corp., 42 F.4th 366, 387 (3d Cir. 2022)). Fischer resolved "whether, in an FLSA collective action in federal court *where the court lacks general personal jurisdiction over the defendant*, all opt-in plaintiffs must establish specific personal jurisdiction over the defendant with respect to their individual claims." Id. at 370 (emphasis added). Because this Court has general personal jurisdiction over Audubon, it does so for all claims presented, including the claims of all opt-in plaintiffs. Id. at 383 ("general personal jurisdiction is broader than specific personal jurisdiction, reaching all potential claims against the defendant regardless of their connection to the state"). See also Thurlow v. Nat'l Inspection Servs., LLC., No. 2:24-1135, 2025 WL 408352, at *6 (W.D. Pa. Feb. 6, 2025) (Fischer does not bar opt-in claims of collective action members who are not based in Pennsylvania because the Court has general personal jurisdiction over defendant). The Motion to Dismiss opt-in claims is also denied without prejudice.

**B.      Motion to Dismiss for Failure to State a Claim**

**1.      Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The complaint must "state a claim to relief that is plausible on its face" by providing facts which "permit the court to infer more than the mere possibility of misconduct…," Ashcroft v. Iqbal, 556 U.S. 662, 678–79

10

(2009), and "raise a right to relief above the speculative level," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). In assessing the plaintiff's claims, "the Court must accept all non-conclusory allegations in the complaint as true, and the non-moving party 'must be given the benefit of every favorable inference.'" <u>Mergl v. Wallace</u>, No. 2:21-CV-1335, 2022 WL 4591394, at *3 (W.D. Pa. Sept. 30, 2022) (quoting <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) and <u>Kulwicki v. Dawson</u>, 969 F.2d 1454, 1462 (3d Cir. 1992)). "However, the Court 'disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'" <u>Mergl</u>, 2022 WL 4591394, at *3 (quoting <u>City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.</u>, 908 F.3d 872, 878–79 (3d Cir. 2018) and <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 681 (3d Cir. 2012)).

### 2.    PMWA and WPCL Claims

Audubon moves to dismiss Walker's claim under the PMWA and WPCL because Walker does not sufficiently allege that he worked in Pennsylvania during the 3-year statute of limitations for the PMWA and WPCL, and "[i]n fact, during his employment with [Audubon], Plaintiff never worked in … Pennsylvania" ECF No. 14 at 24. On the contrary, Walker alleges that Audubon "employed [him] as an environmental inspector since approximately January 2021 until February 2025 in Pennsylvania and Ohio." ECF No. 1 ¶ 17. At this stage of the litigation, Walker's allegations are taken as true, <u>Iqbal</u>, 556 U.S. at 678, and are confirmed as to specific periods by Audubon's Manager of Inspection. <u>See</u> ECF No. 33-1 ¶ 14. Thus, the Motion to Dismiss based on the sufficiency of Walker's allegations connecting him to Pennsylvania is denied.

Audubon also moves to dismiss Walker's WPCL claim because he fails to sufficiently allege the existence of an employment contract. ECF No. 14 at 26-29. To the extent an implied

contract to pay wages may be found, Audubon argues that Walker fails to allege that the parties agreed to pay overtime at a higher rate.

"'The [WPCL] provides employees a statutory remedy to recover wages and other benefits that are contractually due to them.'" Timko v. NSPA Lounge LLC, No. 2:23-CV-1307, 2025 WL 2162470, at *22 (W.D. Pa. July 30, 2025) (quoting Oberneder v. Link Comput. Corp., 696 A.2d 148, 150 (Pa. 1997)).

> "[T]o state a plausible WPCL claim, a plaintiff employee must allege facts demonstrating that he or she was deprived of compensation the employee has earned according to the terms of his or her contract with the defendant employer." Thompson v. IntelyCare, Inc., No. 22-1599, 2025 WL 745224, at *6 (W.D. Pa. Mar. 7, 2025) (Colville, J.); see also Minehan v. McDowell, No. 21-5314, 2023 WL 5432508, at *15 (E.D. Pa. Aug. 22, 2023) ("To prevail on a WPCL claim, a plaintiff must establish: (1) the entity that withheld wages from the plaintiff is an 'employer' under the WPCL; (2) the plaintiff is contractually owed the withheld wages; and (3) the employer, in fact, withheld the contractually owed wages."), aff'd, No. 23-2737, 2024 WL 4403873 (3d Cir. Oct. 4, 2024).

Timko, 2025 WL 2162470, at *22.

It is not disputed that Audubon is an employer under the WPCL. But, as a prerequisite to his claim, Walker must allege facts to support the existence of an agreement with Audubon. Schupack v. Marketvision Rsch., Inc., No. 16-6233, 2017 WL 2828687, at *3 (E.D. Pa. June 29, 2017) (citing De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (to pursue a claim under the WPCL, a plaintiff must show the existence of an employment contract, an implied oral contract, or a collective bargaining agreement); Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. 2011), aff'd, 106 A.3d 656 (Pa. 2014) (confirming that "an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract").

An implied oral contract for wages arises "when parties agree on the obligation to be incurred, but their intention, instead of being expressed in words, is inferred from the relationship between the parties and their conduct in light of the surrounding circumstances." McEnheimer v.

Walmart, Inc., No. 22-46, 2022 WL 3700911, at *1 (W.D. Pa. Aug. 26, 2022) (quoting Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P., 132 F. Supp. 3d 645, 649 (E.D. Pa. 2015)). "'[A] promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service.'" Id. Thus, a WPCL claim will survive dismissal if the plaintiff alleges facts to support an implied agreement that services were performed in exchange for wages to be paid at a specific rate. Schupack, 2017 WL 2828687, at *3 (citing Gordon v. Maxim Healthcare Servs., Inc., No. 13-7175, 2014 WL 3438007, at 4 (E.D. Pa. July 15, 2014) (WPCL claim is stated in the absence of a written employment agreement because plaintiff alleged that "she provided services as a home healthcare aide in exchange for wages to be paid according to a week-long pay period.")).

Walker alleges he was an Audubon employee and that he was required to record his hours for each workday. ECF No. 1 ¶ 67. In exchange for work performed on Audubon's behalf, Walker was paid in accordance with Audubon's day rate pay scheme. Id. ¶ 64. Walker alleges he received a daily wage of $340 for the first 10 hours worked plus an "hourly bonus" of $34 an hour for hours worked beyond 10 in a day. Id. ¶ 65. The pay was "standard" and all Day Rate Workers "signed knowing that we were getting that." Id. ¶ 57. These allegations are sufficient to find that there was an implied employment contract based on the parties' conduct.

As for overtime pay, however, Walker does not allege facts supporting an agreement, implied or otherwise, for a higher rate of pay. Id. ¶ 65. Thus, Walker fails to state a WPCL claim for overtime pay at a higher rate. See Oxner, 132 F. Supp. 3d at 650-51 (plaintiff's WPCL claim for overtime pay at a higher rate was not supported by allegations of a promise or implied agreement of additional compensation and was a legal conclusion "couched as a fact"); compare

Bogo v. Zator L., LLC, No. 24-4685, 2025 WL 1116534, at *4 (E.D. Pa. Apr. 15, 2025) (allegations that plaintiff was entitled to break pay pursuant to company policy sufficient to set forth an alleged contractual right for a WPCL claim). Audubon's Motion to Dismiss any WPCL claim for overtime pay at a higher rate than the agreed upon regular wage is granted and the claim is dismissed without prejudice and with leave to amend. The Motion to Dismiss Walker's PMWA and WPCL claims is otherwise denied.

### C. Motion to Transfer Venue

#### 1. Legal Standard

Audubon brings a Motion to Transfer Venue under 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." When deciding motions to transfer, courts in the Third Circuit consider private and public interest factors which stretch beyond those enumerated in Section 1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

> Private interests include:
>
> Plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Id. (internal citations omitted). Public interests to be considered include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

14

Id. at 879-80 (internal citations omitted).

### 2.    Transfer of Venue is not Warranted.

The Court must first determine whether this action could have been brought in either of Audubon's proposed transferee districts. Stevens v. USA Today Sports Media Grp., LLC, No. 1:23-cv-1367, 2024 WL 1285535, at *2 (M.D. Pa. Mar. 26, 2024) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970)). Venue is proper in judicial districts where: (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). A defendant that is a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. 28 U.S.C. § 1391(c). "In the context of a FLSA case, suit may be brought where the 'alleged FLSA violation – the failure to pay overtime wages – occurred ... where Plaintiffs worked [and] where Defendant is headquartered and would have established policies giving rise to the FLSA violation.'" Stevens, 2024 WL 1285535, at *2 (quoting Stewart v. First Student, Inc., 639 F. Supp. 3d 492, 499 (E.D. Pa. 2022)).

It is no longer disputed that at least a portion of Audubon's alleged FLSA violations occurred in Pennsylvania, where Walker filed this action. Audubon claims that it maintains its principal place of business within the United States District Court for the Southern District of Texas, where the relevant human resource and payroll policy witnesses are located. Audubon also proposes the United States District Court for the Eastern District of Louisiana as an alternative, where it maintains its headquarters and is subject to general personal jurisdiction. ECF No. 16 at

30. Because venue is proper in all three district courts under Section 1391, the Court will apply the balancing test under 28 U.S.C. § 1404(a) to determine whether the case should proceed in the Western District of Pennsylvania or is properly transferred to Texas or Louisiana.

### a. Private Interest Factors

The first factor – plaintiff's forum preference – guides the Court's discretion because "plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879. Walker resides in North Carolina. Thus, "this factor is not accorded with the usual strong preference or weight," but weighs marginally in Walker's favor as his preferred forum. Siegel v. Homestore, Inc., 255 F. Supp. 2d 451, 457 (E.D. Pa. 2003).

The second factor – defendant's choice of forum – "is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." Stewart, 639 F. Supp. 3d at 499. This factor is neutral.

The third factor – whether the claim arose elsewhere – also is neutral. "A FLSA claim is considered to have arisen either where the plaintiffs worked (where the challenged policies were effectuated) or from the employer's headquarters (where the employer would have determined and maintained the challenged policies and practices)." Id. It is undisputed that Walker worked for a time in Pennsylvania. Audubon asserts that its payroll policies and practices were established or effectuated in Texas or Louisiana. Thus, this factor does not favor one district over another and is neutral.

The fourth factor – convenience of the parties – is also neutral. "This factor evaluates the parties 'relative physical and financial condition[s],' Jumara, 55 F.3d at 879, including who can 'afford more easily the inconveniences associated with travel' to the transferee forum." Stewart, 639 F. Supp. 3d at 500. Walker resides in North Carolina. ECF No. 1-1 at 1. Thus, he would bear

lodging and transportation costs to litigate this action in all three jurisdictions. Audubon is a national corporation that provides services in multiple states, including Pennsylvania, and can afford the cost of litigating in the Western District of Pennsylvania.

The fifth factor – convenience of the witnesses – is considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" Jumara, 55 F.3d at 879. Audubon asserts that the witnesses to its payroll practices and processes, as well as its general counsel, are in Texas or Louisiana. ECF No. 16 at 36-37. However, Audubon does not contend that its own employees would be unavailable for trial in the Western District of Pennsylvania. Thus, this factor is neutral.

The sixth favor – locations of books and records – is neutral. Audubon asserts that the relevant documents are housed at its offices in Texas and Louisiana. ECF No. 16 at 37. But the advances in technology and document storage and reproduction give this factor limited significance when weighing the convenience of the parties, and Audubon provides no basis for finding otherwise. Stewart, 639 F. Supp. 3d at 500.

On balance, the private interest factors weigh marginally against transfer based on Walker's preference as reflected by his choice of venue.

**b. Public Interest Factors**

The public interest factors also weigh against transfer.

No party has argued that the first factor – enforceability of judgment – weighs for or against transfer given that a judgment in an FLSA case would be equally enforceable in any of three identified jurisdictions. Id. at 500-01 (citing Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC, 575 F. Supp. 3d 532, 541 (E.D. Pa. 2021)).

17

The second public interest factor – practical considerations of trial logistics – is neutral. Audubon's witnesses are located in its preferred venues, thus trial in its preferred jurisdictions would be less expensive for it. ECF No. 14 at 37. Walker counters that prior litigation against Audubon revealed that nearly half of the employees impacted by Audubon's payroll practices live in or work in Pennsylvania, Ohio, and West Virginia as compared with a much smaller number that reside in Texas. ECF No. 31 at 27-8. Audubon's sole client for whom the work was performed is also headquartered within driving distance of Pittsburgh. Id. Thus, logistics and expenses for witness participation do not weigh strongly in either parties' favor.

The third factor – court congestion – favors maintaining this action in the Western District of Pennsylvania. "This factor queries whether there is an appreciable difference in docket congestion between the two districts and favors the forum with a less congested docket and faster median time from filing to disposition or trial." Stewart, 639 F. Supp. 3d at 502 (internal citations and quotation marks omitted). As of September 2025, 3,221 civil cases were pending in the Western District of Pennsylvania, with an average disposition within 6.5 months. See Table C-3A—U.S. District Courts–Civil Judicial Business (September 30, 2025).[6] The Southern District of Texas had 7,303 pending civil cases, with an average disposition timeline of 7.6 months. Id. The Eastern District of Louisiana had 5,866 pending civil cases, with an average disposition time of 79.9 months. Id. Audubon touts the fewer filings per judge in Louisiana. ECF No. 33 at 21. But the length of time to resolve civil litigation in Louisiana weighs heavily against transfer. Finally,

---

[6] See https://www.uscourts.gov/data-news/data-tables/2025/09/30/judicial-business/c-3a; see also https://www.uscourts.gov/sites/default/files/document/jb_c5_0930.2025.pdf

18

as compared to the Southern District of Texas, the Western District of Pennsylvania has less than half the number of civil cases pending and a comparable median time for disposition.

The fourth public interest factor – local interests of each forum – favors Pennsylvania, where Walker's state law claims arose. Any of the suggested venues could decide Walker's FLSA claim. But to adjudicate the claims of Pennsylvania residents or non-resident plaintiffs who were employed in Pennsylvania, transfer to either of Audubon's preferred venues would require the designated trial court to decide matters of another state's laws.

For the same reasons, the fifth factor – public policies of the fora – weighs against transfer. Through the WPCL and PMWA, Pennsylvania has expressed a strong public interest in enforcing overtime pay policies to ensure workers in the Commonwealth receive all earned compensation.

Finally, the sixth factor – trial judge's familiarity with applicable law – also weighs against transfer given the undersigned's familiarity and extensive experience with Pennsylvania and federal wage and employment law.

After weighing the Jumara public and private factors, Audubon has not met its burden to show that the interest of justice and the convenience of the parties support a transfer to the Southern District of Texas or to the Eastern District of Louisiana. The Motion to Transfer Venue is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 13, is properly granted only as to Walker's WPCL claim for overtime wages at a higher rate than his regular rate of pay, and the claim will be dismissed without prejudice, and with leave to amend to correct the identified

pleading deficiencies if possible. The Motion to Dismiss, or in the alternative, Motion to Transfer

Venue is properly otherwise denied. An appropriate Order will follow.

Dated: March 16, 2026                                 BY THE COURT,

                                                                    MAUREEN P. KELLY
                                                                    UNITED STATES MAGISTRATE JUDGE


cc:      All counsel of record by Notice of Electronic Filing

20