IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM WALKER, *Individually and For Others Similarly Situated,* | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:25 CV 764 Magistrate Judge Maureen P. Kelly |
| v. | ) ) ) | Re: ECF No. 29 |
| AUDUBON COMPAIES, LLC, AUDUBON FIELD SOLUTIONS, LLC, *and* AUDUBON ENGINEERING COMPANY, L.P., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**MAUREEN P. KELLY, United States Magistrate Judge**

Plaintiff William Walker ("Walker") commenced this action against Defendants Audubon Companies, LLC, Audubon Field Solutions, LLC, and Audubon Engineering Company, L.P. (collectively, "Audubon"), for their failure to pay wages that he and other employees like him are owed. ECF No. 1. Specifically, Walker alleges that Audubon did not pay overtime at time and a half their regular rate of pay in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act, ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law, ("WPCL"), 43 P.S. § 260.1, *et seq.* Id.

Presently before the Court is Walker's Motion for Conditional Certification and Notice, seeking preliminary certification of a collective action. ECF No. 29. After consideration of the motion, the memoranda of the parties, and the record, Walker's motion will be granted.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including trial and entry of final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed. ECF Nos. 58 and 59.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Audubon is an employer engaged in multi-state engineering, procurement, and construction services for industrial operators.[2] ECF No. 1 ¶ 45. To meet its business objectives, Audubon employs workers including Walker and other Day Rate Workers throughout the country, including in Pennsylvania and Ohio. Id. ¶ 46.

Audubon employed Walker as an environmental inspector in Pennsylvania and Ohio from approximately January 2021 until February 2025. Id. ¶ 17. Audubon classified Walker and other Day Rate Workers as "temporary" employees hired on a project-by-project basis. Id. ¶ 47. Audubon's scheduling and classification means that Walker and other Day Rate Workers are unemployed for brief periods of less than 45 days, and potentially only for a few days. Id. ¶¶ 49, 51. When reassigned to a new project, Audubon pays its Day Rate Workers only for the days worked, with no predetermined, weekly-calculated guarantee. Id. ¶ 53.

Despite Audubon's project scheduling system, Walker and other Day Rate Workers regularly work more than 40 hours in a workweek. Id. ¶ 55. Audubon routinely bids on jobs based on 6-day work weeks. Thus, Walker typically worked 10-12 hours a day and 6-7 days a week (60-84 hours a workweek). Id. ¶ 72. Audubon does not pay Walker or other Day Rate Workers premium overtime wages when they work more than 40 hours in a workweek. Id. ¶ 56. Instead, Audubon pays pursuant to a day rate pay structure that provides a flat sum for the first 10 hours worked in a workday and an "hourly bonus" equal to their day rate divided by 10 hours for each hour worked over 10 in a day. Id. ¶¶ 56-58. As structured, Audubon paid Walker $340 for his first 10 hours worked each day plus an hourly bonus of $34 per hour for hours worked beyond 10 in a day. Id. ¶ 65. Audubon also did not provide Walker or other Day Rate Workers vacation days, sick

---

[2] The facts are taken from the Complaint and accepted as true at this stage of the litigation. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

days, holiday pay, or any other form of paid leave. Audubon's pay structure was included in employee offer letters and in Audubon's employee handbook. Id. ¶ 66.

Audubon's 4-day and 2-day schedules do not account for overtime hours worked in a week. In the case of 2-day schedules, Audubon paid compensation below the FLSA-exempt threshold despite the number of hours worked in a given week. Id. ¶¶74-83. Thus, pay and work schedules were structured to avoid paying overtime wages in violation of federal and state law. Id. ¶¶ 101-18.

Based on these allegations, Walker seeks conditional certification of the following collective:

> **All Audubon employees who were paid under Audubon's day rate pay scheme at any time during the past 3 years through final resolution of this matter (the "Day-Rate Workers").**

ECF No. 29 at 1. Walker presents the declarations of three other Audubon employees who worked during the relevant time period. They each assert that they worked more than 40 hours per week but were not paid statutorily required overtime pay. ECF Nos. 30-2, 30-3, and 30-4.

Walker has filed a brief and exhibits in support of his Motion. ECF No. 30. Audubon has filed its Brief in Opposition to the Motion with exhibits. ECF No. 41. Walker filed a Reply in Support of Conditional Certification. ECF No. 49.

The motion is ripe for consideration.

## II.    LEGAL STANDARDS

The FLSA "was designed 'to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.'" Thomas v. TEKsystems, Inc., No. 2:21-CV-460, 2025 WL 756067, at *4 (W.D. Pa. Mar. 10, 2025) (quoting Symczyk v. Genesis

3

HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011), *overruled on other grounds by* Genesis

Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013)). "'Under the 'collective action' mechanism set

forth in ... § 216(b), an employee alleging an FLSA violation may bring an action on 'behalf of

himself ... and other employees similarly situated,' subject to the requirement that 'no employee

shall be a party plaintiff to any such action unless he gives consent in writing to become such a

party ....'" Id. (citation modified). As relevant to Walker's proposed collective action, the FLSA

requires employers to pay overtime to certain employees who work more than 40 hours in a work

week. 29 U.S.C. § 207(a).

Courts in the Third Circuit "follow a two-step process for deciding whether an action may

properly proceed as a collective action under the FLSA." Camesi v. Univ. of Pittsburgh Med. Ctr.,

729 F.3d 239, 243 (3d Cir. 2013).

At step one – which is the current posture of this case –

> "the court makes a preliminary determination as to whether the named plaintiffs have made a modest factual showing that the employees identified in their complaint are similarly situated." Id. (cleaned up). A plaintiff's burden at the first step is light and can be met by "produc[ing] some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011) (cleaned up), *rev'd on other grounds sub nom.*, Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66 (2013). If this burden is satisfied, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." Camesi, 729 F.3d at 243. This "conditional certification" is not really a certification at all—instead, "[i]t is actually the district court's exercise of its discretionary power...to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under the FLSA." Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 536 (3d Cir. 2012) (cleaned up).

> At the second step, "with the benefit of discovery," the court "makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." Camesi, 729 F.3d at 243 (cleaned up). The second step can be "triggered" by "the plaintiffs' motion for 'final certification,' by the defendants' motion for 'decertification,' or, commonly, by

4

both." Id. Determining whether class members are similarly situated during this stage "generally requires the consideration of three factors: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant; and (3) fairness and procedural considerations." Kuznyetsov v. W. Penn Allegheny Health Sys., Inc., No. 10-948, 2011 WL 6372852, at *3 (W.D. Pa. Dec. 20, 2011) (Ambrose, J.) (citations omitted).

Put simply, the first stage looks at "whether 'similarly situated' plaintiffs do in fact exist, while at the second stage, the District Court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Zavala, 691 F.3d at 536 n.4 (cleaned up).

"Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." Waltz v. Aveda Transp. & Energy Servs., Inc., No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016) (citation omitted). Given the "modest burden" at the first stage of the proceedings, "motions for conditional certification are generally successful." Id.; see also Bowser v. Empyrean Servs., LLC, 324 F.R.D. 346, 352 (W.D. Pa. 2018) (Cercone, J.) (the first step's "fairly lenient standard typically results in a grant of conditional certification").

Davey v. Joy Cone Co., No. 2:24-CV-1246, 2025 WL 2430264, at *2 (W.D. Pa. Aug. 22, 2025).

## III.    DISCUSSION

### A.  Similarly Situated

Audubon contends that conditional certification is not properly granted because Walker and all potential opt-in plaintiffs are not similarly situated. ECF No. 41 at 3-8. Audubon asserts that beginning in 2023, it altered its pay schedule such that Walker and the identified Opt-In Plaintiffs are no longer Day Rate Workers. Instead, each is a FLSA-exempt salaried worker with extra pay allowances for hours worked over 40 hours each week. Id.

At this initial stage of the litigation, Walker bears the burden of demonstrating that the members of the proposed collective are similarly situated. Zavala, 691 F.3d at 534. But, as noted above, satisfying that burden initially requires only a "modest factual showing." Id. at 536.

Upon review, Walker's evidence, including the declarations of his coworkers, supports his contention that despite cosmetic changes in labels or the manner Audubon's day rate appeared in

5

offer letters and pay stubs, all relevant pay rates and practices remained the same for Audubon's field workers. In practice, there were no salary guarantees, and Audubon failed to pay overtime that was due. ECF No. 49 at 6-9. ECF Nos. 30-1 – 30-4. This evidence is sufficient evidence at this early stage to permit the Court to determine that the employees identified in the Complaint are similarly situated. Audubon's challenges to the factual basis of the declarations may be reconsidered at the later second certification step. See, e.g., Shiptoski v. SMG Grp., LLC, No. 3:16-CV-1216, 2018 WL 11484967, at *3 (M.D. Pa. Jan. 31, 2018), *report and recommendation adopted*, No. 3:16-CV-01216, 2018 WL 11484966 (M.D. Pa. Mar. 5, 2018) (citing Galt v. Eagleville Hosp., 238 F. Supp. 3d 733, 737 (E.D. Pa. 2017) ("Defendant will have the opportunity to revisit the merits of Plaintiffs' claims at a later time, but for purposes of conditional certification, Plaintiffs have made the requisite modest factual showing that other employees are similarly situated.")).

### B. Look Back Period

Actions under the FLSA must be commenced within two years of the alleged violation, or within three years if the violation is willful. 29 U.S.C. § 255(a). To adequately plead that an FLSA violation is willful, Walker must allege facts that Audubon "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Delk v. Automated Health Sys., Inc., No. 2:24-00802, 2025 WL 3140339, at *5 (W.D. Pa. Nov. 10, 2025) (quoting McLaughlin v. Richland Shoe Co., 486 U.S. 128, 132 (1988) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985)). "It does not require a showing of egregiousness." Stone v. Troy Construction, LLC, 935 F.3d 141, 150 (3d Cir. 2019). When considering the scope of a proposed notice to potential collective members, willfulness is considered under the same standard used in the first stage of FLSA conditional certification. Id. (citing Delk, 2025 WL 3140339, at *5

(citing Titchenell v. Apria Healthcare Inc., 2011 WL 5428559, at *8 (E.D. Pa. Nov. 8, 2011)). Thus, only a modest showing is required.

Walker alleges that Audubon knew the FLSA and PMWA required it to pay Day Rate Workers overtime at rates not less than 1.5 times their regular rate of pay for all hours worked over 40 in a work week. ECF No. 1 ¶¶ 147-161. Walker contends that Audubon's involvement in several past lawsuits provided notice that it routinely failed to pay required overtime wages "under the same or similar Day Rate Pay scheme at issue in this Complaint." Id. ¶ 160 (listing cases). These allegations are sufficient at this stage of the litigation to permit notice to be sent to proposed collective members who were paid under the system at issue during the 3 years from the date of this Memorandum Order through final resolution of this matter.

Audubon argues that issue preclusion requires a shorter two-year limitations period because the United States District Court for the Eastern District of Louisiana held that Audubon did not willfully violate the FLSA through its Day Rate pay practice. ECF No. 41 at 8-10 (citing Cencarik v. Audubon Field Solutions, LLC, No. 2:22-cv-03566, 2025 WL 1124957 (E.D. La. April 16, 2025). According to Audubon, the issue of willfulness was fully litigated in Cencarik by the same plaintiff's counsel on behalf of inspectors who presented an identical challenge to Audubon's day rate pay practices. Id. Thus, Audubon contends that issue preclusion bars relitigation of Audubon's willfulness, and bars extending potential claims in this action to the statutorily authorized three-year limitations period.[3]

Audubon prematurely raises questions of law and fact related to the offensive use of issue preclusion against a non-party to the prior proceeding. This include whether the parties shared the

---

[3] Audubon uses claim preclusion and issue preclusion interchangeably. The Court understands Audubon's argument to raise issue preclusion. See In re: Adams, 151 F.4th 144, 153 (3d Cir. Sept. 3, 2025) (issue preclusion "bars 'successive litigation of an issue of fact or law'" that was "'actually litigated[,] resolved in a valid court determination[, and] essential to th[at] prior judgment,' even if the issue recurs in the context of a different claim.") (citation omitted).

7

same interest where, as here, Pennsylvania claims are asserted with an FLSA claim, and whether the claims of the proposed collective may be barred despite the plain language of 29 U.S.C. § 216(b) (providing that "no employee shall be a party plaintiff to any such action unless he gives consent in writing to become such a party ....."). These merits-based matters are not appropriate at the preliminary stage of the certification process. See Joyce v. Colter Energy Svcs. USA, Inc., No. 2:22-1367, 2024 WL 2794278, at *5 (W.D. Pa. May 31, 2024) (determinations about limitations are merits-based and can be addressed at a later time).

### C. Content of Notice

Walker provides a proposed Notice and Consent form to send to potential collective members. ECF No. 30-8. Audubon raises four objections to the breadth and scope of the proposed form. ECF No. 41 at 11-12.

Approval of the proposed Notice is subject to the Court's discretion under the FLSA to facilitate effective notice to potential collective action plaintiffs. Hoffmann–La Roche v. Sperling, 493 U.S. 165, 169 (1989)). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative." Hoffmann–La Roche, 493 U.S. at 172. In this case, the Court will exercise its discretion to approve the Notice as proposed.

Audubon first seeks to limit distribution to Audubon's employees that were subject to a day rate pay structure with a "guaranteed weekly salary." ECF No. 41 at 11. However, as alleged in the Complaint, Audubon subjected field employees to day rate pay structures under various labels that resulted in the failure to pay overtime due under the FLSA, including those it purported to but failed to pay a "guaranteed weekly salary." ECF No. 1 ¶¶ 93-99. Thus, the Court will not limit distribution to the class of employees proffered by Audubon.

Audubon also seeks to limit Notice recipients to Pennsylvania inspectors as opposed to the class of Audubon "field employees" identified in the Notice. ECF No. 41 at 11 (inspectors); ECF No. 41 at 12 (Pennsylvania inspectors). Walker seeks to represent a nationwide class of Audubon field-based employees that he asserts were subject to Audubon's uniformly applied day rate pay structure. ECF No. 1 ¶ 60; see also, ECF No. 1-5 at  (Deposition of Audubon Human Resources Director) ("all of our field-based employees are paid like that"). Based on the record presented, particularly Audubon's alleged practice of paying all field-based employees the same, the Notice will not be limited to "inspectors," nor to inspectors assigned to work in Pennsylvania.

Finally, Audubon asks the Court to limit the notice period to 30 days without reminders instead of the 60 days with a 30-day reminder in Walker's proposed Notice. Audubon contends the requested notice is excessive because Walker's counsel solicited for plaintiffs through LinkedIn "since at least April 2024." ECF No. 41 at 11; ECF No. 41-22.

The "overarching policies of the FLSA require that the notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." Joyce, 2024 WL 2794278, at *6 (quoting Hoffmann-LaRoche, 493 U.S. at 174)(alterations in original). Audubon's evidence of  counsel's indirect communication on a single social media outlet does not meet these purposes. Thus, the Court concludes that the proposed 60-day notice period with a 30-day reminder is reasonable and appropriate for effective communication with proposed collective members.

## IV    CONCLUSION

For the foregoing reasons, Walker's Motion for Conditional Certification and Notice, ECF No. 29, will be granted and the following class be conditionally certified pursuant to 29 U.S.C. § 219(b):

**All Audubon employees who were paid under Audubon's day rate pay scheme at any time during the past 3 years through final resolution of this matter (the "Day-Rate Workers").**

The Court will also authorize Walker to send the proposed Notice in the form presented by Walker and attached to the forthcoming Order, as amended.

Dated: March 16, 2026                BY THE COURT,

                                    MAUREEN P. KELLY
                                    UNITED STATES MAGISTRATE JUDGE

cc:     All counsel of record by Notice of Electronic Filing